UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

ALBERT WOODFOX

VERSUS                                            CASE NO. 14-cv-662-JJB-SCR

JAMES LEBLANC, ET AL.

# RULING

Plaintiff, Albert Woodfox, filed a Complaint (doc. 1) with this Court seeking injunctive, declaratory and monetary relief for violation of the First, Eight, and Fourteenth Amendment of the United States Constitution and 42 U.S.C. § 1983, along with state law claims. The Named Defendants, James Leblanc, Howard Prince, Kirt Gurien, and Greg McKey, move for this Court to dismiss all claims arguing that the Complaint fails to assert any claim upon which relief may be granted (doc. 4). There are five unnamed defendants who are not parties to this motion. All responsive briefs have been considered.

## STANDARD OF REVIEW

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A pleading is plausible when the plaintiff pleads "factual content" that allows the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id*. at 663. When a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id*. (quoting *Twombly*, U.S. at 557 (2007)). "In reviewing a Rule 12(b)(6) motion, the Court must accept all well-pleaded facts in the complaint as true and view them in the light most favorable to the plaintiff."

1

*Davis v. Bellsouth Telecomm.*, 2012 WL 2064699, at *1 (M.D. La. June 7, 2012) (citing *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996)).

## **FACTUAL ALLEGATIONS**

i.  *Plaintiff's First Amendment Activities*

As part of Plaintiff's habeas corpus proceedings, an evidentiary hearing was scheduled by this Court on March 14, 2012 for May 29-31 2012 (doc. 1, at 5). Prior to the hearing a written statement prepared by Mr. Woodfox was read to the media at a press conference. *Id*. Following this, Defendant LeBlanc issued a statement that the DOC needed to isolate Mr. Woodfox because he was a danger to prison employees, other inmates and visitors. *Id*. The Middle District of Louisiana ordered Mr. Woodfox's transfer from David Wade Correctional Center to the custody of the Department of Corrections of the State of Louisiana on Friday, May 25, 2012. *Id*. Mr. Woodfox was ordered to remain in the Department of Corrections custody until Friday, June 1, 2012. *Id*. Defendant LeBlanc, Secretary of the Louisiana Department of Public Safety and Corrections ("DOC"), and Defendant Prince, Warden of Elayn Hunt in St. Gabriel in 2012, were aware of the impending hearing by way of the judicial order of May 8, 2012 and media coverage.

ii. *Unconstitutional Confinement at Elayn Hunt*

On or about May 25, 2012, the DOC transferred Mr. Woodfox from Wade to Hunt in St. Gabriel, Louisiana (doc. 1, at 5). Upon his arrival, Mr. Woodfox was subject to the intake process and medical staff's evaluation. Defendant Doe #3 gave Mr. Woodfox a Hunt's identification card. An employee from the classification department conducted a literacy test on Mr. Woodfox, which he passed. *Id*. at 5-6. Mr. Woodfox never appeared before a Hunt classification or disciplinary board. *Id*. at 6. Defendant Doe #1 brings Mr. Woodfox to the cellblock after completing intake while awaiting placement to a specific cell. *Id*. During the wait,

Mr. Woodfox heard Defendant Doe #1 on a phone call with an unknown prison official (Defendant Doe #2). Woodfox heard Defendant Doe #1 say, "C-Tier, are you sure about that?" After inquiring from an inmate orderly, Mr. Woodfox was told that C-Tier was referred to as "the dungeon." Mr. Woodfox asked Defendant Doe #1, after his phone conversation ended, why he would be placed in the dungeon. To this, Defendant Doe #1 responded, "this comes from a higher up." Mr. Woodfox remained in C-Tier, cell 10 until June 6, 2012, five days beyond what was contemplated by the judicial order. Prior to his transfer to Hunt, Mr. Woodfox had no pending disciplinary reports nor was he subject to any investigation for institutional rule infractions. Mr. Woodfox had not received a single disciplinary write up in several years. Mr. Woodfox was housed in C-Tier for 13 days, where he claims to have been subject of significant and atypical hardships, particularly given that there was no legitimate justification for holding him there.

Mr. Woodfox was subject to extreme restrictions while housed in C-Tier. *Id*. Mr. Woodfox was held in lockdown isolation the entirety of every day, except for a 15 minute shower every day; and except for the three days he was allowed out to appear in court. *Id*. at 6-7. Mr. Woodfox did not have access to the canteen or to a television during this period. *Id*. at 7. Mr. Woodfox was not permitted to make any phone calls, participate in any outdoor yard exercise, or visit with his friends or family. On information and belief, Mr. Woodfox was served inedible frozen food covered in ice. Mr. Woodfox was deprived of clothing and personal hygiene effects he brought with him for the move. Hunt officials required Mr. Woodfox wear leg irons when he left his cell, including when he went for a shower, yet his socks were confiscated. Therefore, he had nothing to protect his angles from this tool of confinement, leaving him with bruises and cuts on his ankles. In the dungeon, Mr. Woodfox was subject to high noise levels and other inmates

3

yelling, moaning, and speaking to themselves during the day and night. While confined at Hunt, Mr. Woodfox was exposed to extreme heat. The confinement area was not temperature controlled and had one fan that remained pointed at the floor for the extent of Mr. Woodfox's stay at C-tier. *Id.* at 8. According to local weather data, the temperatures outside during Mr. Woodfox's stay reached above 90 degrees. During his confinement at Hunt, Mr. Woodfox was denied social vitiation, including a pre-approved visit scheduled at Wade with a friend who travelled from outside the United States for the visit. On June 5, 2012, Defendants Prince and McKay, along with other unknown police officials, briefly spoke to Mr. Woodfox and identified no legitimate grounds for his house in C-tier. Mr. Woodfox complained about his conditions to Defendant Does #3-5 during his stay at Hunt. Notice was never provided to Mr. Woodfox from DOC or Hunt officials explaining the decision for such restrictive housing. Mr. Woodfox was never given the opportunity to contest the "decision to house him in the most punitive and severe conditions within Elayn Hunt" (doc. 1, at 8). Upon his return to Wade, Mr. Woodfox submitted a complaint about his "unjustified placement in the dungeon while at Elayn Hunt," and has since exhausted all administrative remedies available. *Id.*

    *iii.    Harm Suffered*

Mr. Woodfox suffered from fatigue and exhaustion due to a combination of factors, including the extreme noise from other inmates, extreme heat, and deprivation of edible food, all of which kept him from sleeping. *Id.* at 9. Mr. Woodfox was already at a greater risk for fatigue due to his preexisting medical conditions. Mr. Woodfox's suffering from exhaustion and fatigue affected him during his evidentiary hearing, making it difficult for Mr. Woodfox to stay awake during the proceedings and assist his attorneys throughout the proceedings. Mr. Woodfox suffered emotional and mental anguish as a result of his C-Tier confinement for thirteen days.

The anguish affected his ability to physically follow and assist his attorneys in the court proceedings. Mr. Woodfox suffered cuts and bruises from the iron leg shackles he was forced to wear without socks. This pain too distracted Mr. Woodfox throughout his evidentiary hearing. *Id*. at 9-10. Mr. Woodfox was deprived of pre-approved social contact

Mr. Woodfox would not have suffered in these ways if he had been placed is housing that was "not more restrictive than necessary, instead of in housing ordinarily reserved for inmates who have been properly sentenced by a disciplinary board to punitive isolation cells" (doc. 1, at 10). Mr. Woodfox urges that the Defendants "directed or facilitated this targeted mistreatment of Mr. Woodfox in retaliation for exercising his constitutionally protected rights to access the courts, free speech and association, and because of Defendants' perceptions of Mr. Woodfox's political views and associations, and particular opinions." *Id*. Mr. Woodfox believes that Defendant LeBlanc knew that Mr. Woodfox was wrongfully placed in such unnecessarily restrictive confinement but did nothing to rectify the circumstances. Defendants' placement of Mr. Woodfox in C-Tier was done with "deliberate indifference, and in reckless disregard for or knowing violation of his rights." *Id*. Defendants' acts and omissions caused Mr. Woodfox to suffer from "1) the retaliation he experienced as a result of his First Amendment activities; 2) the atypical, disorienting conditions imposed upon him without notice or review while housed in the dungeon at Hunt; 3) the deprivation of adequate, effective, and meaningful access to the court during his evidentiary hearing; and 4) the deprivation of notice and opportunity to contest the loss of privileges and placement in the dungeon upon his arrival at Elayn Hunt." *Id*.

## **LEGAL ANALYSIS**

In his complaint, Mr. Woodfox asks this court to grant the following relief: (A) declare Defendants' conduct unlawful; (B) enjoin and restrain Defendants from taking other adverse

actions against Mr. Woodfox because of his speech activities, political ideology or affiliation, or in retaliation for Mr. Woodfox availing himself to their right of access to the courts; (C) award compensatory damages; (D) award punitive damages; (E) grant attorney's fees and costs; (F) trial by jury; and (G) such other relief as the Court deems just and proper.

Defendants urge that there is no colorable claim for injunctive or declaratory relief since Woodfox has not resided at Hunt at any time since the thirteen day period in 2012 (doc. 4-1, at 2). Further, Defendants urge that Mr. Woodfox has failed to allege the requisite physical injury needed to support a claim of 42 U.S.C. § 1997(e). *Id*. Defendants further assert that all claims for damages against the Defendants in their official capacity are barred by sovereign immunity. *Id*. Finally, Defendants urge that all claims asserted against them in their individual capacity are barred by qualified immunity. *Id*.

    *i.*    *Claims against Defendants in their Official and Individual Capacities*

    *a. Sovereign Immunity*

Defendants' ask this Court to dismiss all damage claims asserted against them in their official capacities based on sovereign immunity (doc. 4-1, at 8). In his opposition, Mr. Woodfox only makes the conclusory statement that Defendants are not shielded by the doctrine of sovereign immunity for their decision to place Mr. Woodfox "in the most restrictive housing conditions at Elayn Hunt Correctional center…for thirteen days also result[ing] in additional constitutional deprivations and injury to Mr. Woodfox" (doc. 6, at 1).

Because of the sovereign immunity granted by the Eleventh Amendment, Section 1983 claims may only be asserted against persons and "neither a State nor its officials acting in their official capacities are 'persons' under § 1983." *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989). State employees and officials acting in their official capacities may not be sued for

monetary damages under § 1983, but they may be sued for prospective relief. *See Brennan v. Stewart*, 834 F.2d 1248, 1253 (5th Cir. 1988); See also *Ex Parte Young*, 209 U.S. 123 (1908). Prospective relief, under the Eleventh Amendment, is limited to situations where the claimant has a protected interest. *Board of Regents of State Colleges v. Roth*, 408 U.S. 564 (1972). Protected interests are those within the Fourteenth Amendment's language of "liberty" and "property." *Id*. at 569–70.

Therefore, all claims for damages asserted against Defendants in their official capacities are **DISMISSED**.

*b. Qualified Immunity*

Defendants never contend that a colorable constitutional claim has been asserted. However, should this Court find that there is a colorable constitutional claim, Defendants urge that Mr. Woodfox's claims against Defendants in their individual capacities are barred by Defendants' qualified immunity (doc. 4-1, at 7). Qualified immunity protects government officials "from liability for civil damages [individually] insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known" (doc. 4-1, at 8, quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).

Qualified immunity is a personal defense. In order to impose liability under § 1983, Mr. Woodfox must sufficiently allege that each prison official sued was personally and directly involved in conduct causing the alleged deprivation of an inmate's constitutional rights (doc. 4-1, at 9). Defendants argue that Mr. Woodfox failed to establish any link between the individual defendants and any alleged unconstitutional conduct. *Id*. Defendants urge that the complaint contains only conclusory allegations as to Wardens Prince, McKey, Guerin and Secretary LeBlanc. At most, Mr. Woodfox alleges that two of the Defendants, Prince and McKey, "walked

the hall of C-Tier and briefly spoke to Mr. Woodfox…" at the time while Mr. Woodfox was detailed. Mr. Woodfox does not allege a constitutional violation arising out of these two Defendants' walk.

The four named Defendants have brought the motion at issue. Their names, however, were raised rather infrequently in Mr. Woodfox complaint when asserting constitutional violations. The following allegations were made in Mr. Woodfox's complaint: Defendant LeBlanc issued a statement sometime after Mr. Woodfox's statement was read to the media stating that DOC needed to isolate Mr. Woodfox because of the danger he posed (doc. 1, at 5); Defendants LeBlanc and Prince were aware of Mr. Woodfox's impending hearing that ultimately brought him to Hunt for thirteen days (doc. 1, at 5); Mr. Woodfox believes that Defendant LeBlanc knew of Mr. Woodfox's placement in unnecessarily restrictive confinement but did nothing to rectify the circumstances (doc. 1, at 10). Other allegations involved unnamed Defendants Doe #1-5.

Mr. Woodfox's remaining allegations in his complaint refer to all Defendants. Mr. Woodfox urges that the Defendants "directed or facilitated this targeted mistreatment of Mr. Woodfox in retaliation for exercising his constitutionally protected rights to access the courts, free speech and association, and because of Defendants' perceptions of Mr. Woodfox's political views and associations, and particular opinions." *Id*. Defendants' placement of Mr. Woodfox in C-Tier was done with "deliberate indifference, and in reckless disregard for or knowing violation of his rights." *Id*. Defendants' acts and omissions caused Mr. Woodfox to suffer from "1) the retaliation he experienced as a result of his First Amendment activities; 2) the atypical, disorienting conditions imposed upon him without notice or review while housed in the dungeon at Hunt; 3) the deprivation of adequate, effective, and meaningful access to the court during his

evidentiary hearing; and 4) the deprivation of notice and opportunity to contest the loss of privileges and placement in the dungeon upon his arrival at Elayn Hunt." *Id*.

It is the argument of the named Defendants that Mr. Woodfox has failed to sufficiently allege how any of these four defendants are responsible for alleged constitutional violations. This Court finds that Mr. Woodfox has failed to provide plausible claims linking any of the individual defendants to any of the allegedly unconstitutional conduct. Therefore, the constitutional violations asserted against the named Defendants are **DISMISSED** as insufficiently pled.

   ii.   *Leave to Amend Complaint*

In light of the insufficiently pled facts in the complaint and pursuant to Rule 15 of the Federal Rules of Civil Procedure, this Court grants leave for Mr. Woodfox to amend his complaint to correct this error.

The Court **GRANTS** Mr. Woodfox twenty-one (21) days to amend the original complaint with this Court.

## CONCLUSION

The Court finds that all claims for damages asserted against the named Defendants in their official capacities are **DISMISSED** pursuant to the doctrine of sovereign immunity. The Court finds that all claims for relief asserted against the named Defendants in their individual capacities are **DISMISSED** as insufficiently pled. However, pursuant to Rule 15 of the Federal Rules of Civil Procedure, this Court **GRANTS** twenty-one (21) days for Plaintiff to amend the original complaint.

Signed in Baton Rouge, Louisiana, on April 14, 2015.

_____
**JUDGE JAMES J. BRADY
UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA**